362 So.2d 449 (1978)
Dr. Robert KIRSNER, Appellant,
v.
The UNIVERSITY OF MIAMI, Appellee.
No. 77-1760.
District Court of Appeal of Florida, Third District.
September 12, 1978.
Marks & Leinoff and Allan B. Marks, Miami, for appellant.
Mershon, Sawyer, Johnston, Dunwody & Cole and Robert T. Wright, Jr. and Charles C. Kline, Miami, for appellee.
Before HENDRY and HUBBART, JJ., and CHARLES CARROLL (Ret.), Associate Judge.
HENDRY, Judge.
Appellant/plaintiff, Dr. Robert Kirsner, appeals from a final judgment rendered in favor of appellee/defendant, The University *450 of Miami, in an action which sought declaratory relief. The final judgment is self-explanatory and is set forth as follows:
"This action came on for trial by the Court, neither party having demanded trial by jury. Plaintiff, a tenured member of the University's faculty, sought a declaration that the University was obligated to pay Plaintiff the same salary he received as `Department Chairman' even though he no longer performed the duties of a `Department Chairman.' Plaintiff's claim was based on a letter dated December 10, 1973 which was prepared and given to him by the Dean of the University's College of Arts and Sciences. The essence of the letter was that in consideration for Plaintiff's resignation as Department Chairman, his future yearly salary as a faculty member would not be reduced even though he no longer performed a Department Chairman's duties in addition to his duties as a regular faculty member.
"Among the defenses raised by the University were the following:
"1. The Dean of the College of Arts and Sciences lacked both the actual and apparent authority to make the promise set forth in the letter of December 10, 1973.
"2. There was no consideration flowing to the University to bind it to the promise set forth in the letter of December 10, 1973.
"After hearing all of the evidence, the Court finds and concludes as follows:
"FINDINGS OF FACT
"1. It was the University's usual custom and practice to increase a faculty member's salary by a specified formula if he assumed the duties of the Department Chairman of a large department. Plaintiff's department was a large department and he received such an increase upon becoming Department Chairman. It was also the University's usual custom and practice to reduce a faculty member's salary by a specified formula if he resigned or was removed as Chairman of a large department.
"2. Plaintiff did not voluntarily resign as Department Chairman but was removed by the Dean of the College of Arts and Sciences on November 19, 1973. The Dean had the authority to remove Plaintiff as Department Chairman. The letter of December 10, 1973 characterized Plaintiff's removal as a `resignation' only as a face-saving device to avoid unduly embarrassing Plaintiff.
"3. The Dean of the College of Arts and Sciences was authorized by the University to advise Plaintiff that his salary would not be reduced for the remainder of the then current 1973-1974 academic year and for the 1974-1975 academic year, ending May 31, 1975, in recognition of his past services to the University.
"4. The Dean did not have the authority to promise on behalf of the University that Plaintiff's salary would not be reduced after May 31, 1975. The promise to this effect was gratuitously volunteered by the Dean after he removed Plaintiff as Department Chairman and was not bargained for by Plaintiff.
"5. The University took no action and made no statement that would reasonably lead Plaintiff to believe that the Dean of the College of Arts and Sciences had any authority to make the promise contained in his letter of December 10, 1973. Plaintiff should have known that the Dean lacked such authority.
"6. Plaintiff's salary was not reduced to reflect his removal as Department Chairman until after May 31, 1975 in accordance with the commitment actually authorized by the University.
"7. Plaintiff's salary was reduced after May 31, 1975 by the specific formula normally applied by the University when reducing the salary of a faculty member relieved of the duties of Department Chairman of a large department.
"CONCLUSIONS OF LAW
"1. The Dean of the College of Arts and Sciences lacked the actual, apparent, or implied authority to bind the University *451 not to reduce Plaintiff's salary after May 31, 1975.
"2. There was no consideration sufficient to bind the University to the promise set forth in the letter of December 10, 1973.
"3. The fact that Plaintiff has tenure as a member of the University's faculty, does not affect the University's right to reduce that portion of his salary paid to him for performing the duties of a Department Chairman since tenure does not apply to administrative duties and positions.
"FINAL DECREE
"1. Having made the foregoing findings of fact and conclusions of law, the rights of the parties are hereby:
"DECLARED AND ADJUDGED as follows:
"1. The letter dated December 10, 1973 from the Dean of the University's College of Arts and Sciences to Plaintiff does not constitute a binding contract.
"2. The University is not obligated to pay Plaintiff the additional salary of a Department Chairman after May 31, 1975.
"3. This order shall constitute the final judgment of the Court which is that Plaintiff shall take nothing by this suit and Defendant shall go hence without day.
"DONE AND ORDERED, in Chambers at Miami, Dade County, Florida on this 20 day of May, 1977."
After careful reviewing the record, it is our opinion that there was substantial, competent evidence to support each of the trial judge's findings of fact. As such, we will not substitute our judgment for that of the trial judge's. Whitman v. Pet Incorporated, 335 So.2d 577 (Fla. 3d DCA 1976).
As for the conclusions of law, it is apparent from the record that there was no "bargained for" consideration to support any alleged contract between Dr. Kirsner and the University, as the former had no "right" to the position of chairman and was clearly subject to dismissal by the University at any time. See Lake Sarasota, Inc. v. Pan American Surety Co., 140 So.2d 139 (Fla. 2d DCA 1962). Therefore, whether Dr. Kirsner "resigned" or was, as the trial judge found, "removed" by the University from the chairmanship, is of little legal consequence.
Further, even if consideration could be found for the "letter contract," it is clear from the record that the Dean of the College of Arts and Sciences lacked either the actual or apparent authority to bind the University to any contractual arrangement with Dr. Kirsner. See Thomkin Corporation v. Miller, 156 Fla. 388, 24 So.2d 48 (1945) and Stiles v. Gordon Land Co., 44 So.2d 417 (Fla. 1950). In addition, the University never intended to ratify the aforementioned unauthorized act of its agent, the Dean. Costello v. Lipsitz, 547 F.2d 1267 (5th Cir.1977).
In conclusion, there being substantial, competent evidence to support the "findings of fact," and the "conclusions of law" being both logically and legally following from those factual findings, the judgment appealed from is hereby affirmed.
Affirmed.