MR. JUSTICE HARRISON
dissenting:
I would affirm the complete and thorough findings of fact and conclusions of law and judgment of the District Court in this matter. We are not considering a question of tenure. Both parties admit that the tenure question is part of Dr. Keiser’s contract with the University. The question is whether appellant is entitled to the salary of an administrative position which she no longer holds.
When the language of appellant’s 1977-78 employment contract is examined, there is no question that the University had a right to refuse to reemploy Dr. Keiser in a director’s job, to refuse to give her a director’s salary, or to hire her for a director’s term. The rules and regulations of the Montana Board of Regents of Higher Education have been carefully examined, and I find no substantial evidence upon which the majority can rest its opinion. My review has not revealed any authority on which Dr. Keiser could rely to retain her present salary; nor can I find case law on any known *47 statutory tenure within this State or otherwise which would support either the salary or the term of Dr. Keiser’s contract.
A search of the treatises involved in this subject matter fails to reveal any authority indicating that a concept of nonstatutory tenure provides a guarantee of a particular salary or a term of contract. On the contrary, the persuasive authorities indicate a general concensus among the scholars and academicians that while there is no precise, universally-accepted definition of the nonstatutory tenure concept, the rights accorded by the latter are essentially procedural, i. e., tenure assures against a refusal to reappoint the faculty unless and until certain “due process” procedures are adhered to. See Statement of Principles on Academic Freedom and Tenure, American Association of University Professors and the American Association of Colleges (1940); Legal Handbook for Educators, P. Hollander, 132 Westview Press (1978).
Dr. Keiser failed to prove that she placed any reliance on any generally promulgated or accepted concept of tenure which supports her position that her “tenure rights” give her the right of receiving the director’s salary or to be employed for the director’s term in view of the fact that she no longer was employed as the director of the school of home economics. Concerning the question of her salaried rights in an already recognized tenured position as a professor, there is ample authority that supports the findings of fact and conclusions of law and judgment of the District Court.
The case of Barnes v. Washington State Community College Dist. No. 20 (1975), 85 Wash.2d 90, 529 P.2d 1102, fully addresses the question of the interpretation and the application of nonstatutory tenure in the State of Washington. There the Supreme Court refused to extend tenured rights to departmental chairmen and, in so doing, held that such a refusal was “consistent with the accepted purposes of tenure.” The question of the meaning and the purpose of tenure brought this response:
“. . . The interpretation we have given them [the teacher tenure statutes] is the most reasonable to us in light of their language and apparent purpose. Most importantly, this interpretation is consis *48 tent with the accepted purpose of tenure, which is the primary concern of these statutes. The most authoritative source regarding the meaning and the purpose of tenure is the American Association of University Professors. In 1940, the Association issued a Statement of Principles on Academic Freedom and Tenure which made clear that the purpose of tenure is to protect the faculty member in the classroom and in scholarly research. As quoted in C. Byse & L. Joughin, Tenure in American Higher Education; Plans, Practices, and the Law (1959) at pages 172 and 173:
“ ‘Institutions of higher education are conducted for the common good and not to further the interest of either the individual teacher or the institution as a whole. The common good depends upon the free search for truth and its free exposition.
“ ‘Academic freedom is essential to those purposes and applies to both teaching and research. Freedom in research is fundamental to the advancement of the truth. Academic freedom in its teaching aspect is fundamental for the protection of the rights of the teacher in teaching and of the student to freedom in learning. It carries with it duties correlative with rights.’
“These purposes would not be served by extending tenure to department heads in their positions as such, and administrative considerations militate against such an extension. In a statement adopted in 1966, the American Association of University Professors said:
“ ‘The chairman or head of a department, who serves as the chief representative of his department within an institution, should be selected either by departmental election or by appointment following consultation with the members of the department and of related departments; appointments should normally be in conformity with department members’ judgment. The chairman or department head should not have tenure in his office; his tenure as a faculty member is a matter of separate right. AAUP, Policy Documents and Reports 38 (1973).’ ” Barnes v. Washington State Community College Dist. No. 20, supra, 529 P.2d at 1104.
*49 This rationale was adopted in a recent Florida Court of Appeals decision involving a departmental chairman of the University of Miami. Kirsner v. University of Miami (Fla.App.1978), 362 So. 2d 449, cert. denied, 367 So.2d 1124. This case is substantially on all fours with the present case. In Kirsner a tenured faculty member of the University of Miami brought a declaratory judgment action against the University, seeking a declaration that the latter was obligated to pay him the same salary he received as a department chairman, notwithstanding the fact that he no longer held that position. Ruling in favor of the University, the Florida Court of Appeals affirmed and cited with approval the Florida District Court’s conclusion of law which held in part:
“3. The fact that Plaintiff has tenure as a member of the University’s faculty does not affect the University’s right to reduce that portion of his salary paid to him for performing the duties of a Department Chairman since the tenure does not apply to administrative duties and positions.”
The rationale of the Washington and Flordia courts in denying faculty tenure to an administrative position or to its salary has been recently recognized by this Court in a case involving a “manager of services.” Sibert v. Community College of Flathead County (1978) 179 Mont. 188, 587 P.2d 26, 35 St.Rep. 1780. Admittedly, that case dealt with the interpretation and application of statutory language (section 20-4-203 et seq. MCA) which covered teacher tenure; however, the reasoning articulated therein is instructive and applicable to the case at bar.
Faculty tenure at Montana State University is not an inherent employment right, nor is it one which has been created or defined by statute. It is a right which results, if at all, from an express grant (via regulation, contract or otherwise) of the governing body of the Montana University System, which is the Board of Regents of Higher Education. That Board of Regents receives its powers from the Montana Constitution. Therefore, we must look to the actions and the enactments of this governing body of the university system to find if such a grant has been made, and, assuming it has, to the *50 language and/or circumstacnes of the grant to determine the nature and extent of the rights that have been accorded.
The Board of Regents of Higher Education, under Art. X, Sec. 9, 1972 Mont.Const., is the governing body of the University System. As such, it is vested with “full power, responsibility, and authority to supervise, coordinate, manage and control the Montana University System ...” Pursuant to this power and authority, the Board of Regents has provided for the granting of “tenure” to academic, i.e., instructional and research faculty at Montana State University under certain circumstances. The procedure by which “tenure” is granted, and the rights accorded thereunder, are set forth in the Board of Regents of Higher Education Rules for Tenure and Termination. These rules appear in toto on Dr. Keiser’s 1977-1978 employment contract and, additionally, were printed in the faculty handbook for Montana State University and considered by the trial judge in his findings of fact and conclusions of law.
Paragraph 7, “Transfer of Titles,” of the contract tenure rules provides:
“Transfer of Titles. The offices and titles of deans, assistant deans, directors, heads of departments, and chairmen may be transferred by the president of the institution, in his discretion, from one member of the professional staff to another as the interests of the institution may require.” (Emphasis added.)
There is no question that Dr. Keiser held the office of the Director of School of Home Economics at the “discretion” of the president of the Montana State University. She, like other administrators, did not and could not acquire tenure to the position, salary, contract term or any other privilege of that office.
By her contract, when Dr. Keiser ceased being employed as a director, with the director’s salary and term, she once again became a tenured professor entitled to the salary accompanying that position.
For the above reasons I would affirm the opinion of the District Court.