714 P.2d 1308

Peter FRANKEN, Plaintiff/Appellant,

v.

**ARIZONA BOARD OF REGENTS, a body corporate; Henry Koffler, President of the University of Arizona, and Nils Hasselmo, Provost of the University of Arizona, Defendants/Appellees.**

**No. 2 CA–CIV 5462.**

Court of Appeals of Arizona, Division 2, Department A.

Nov. 21, 1985.

Review Denied Feb. 25, 1986.

Little, Fisher & Siegel, P.C. by Barbara E. Fisher, Tucson, for plaintiff/appellant.

James L. Richmond, Tucson, for defendants/appellees.

## OPINION

FERNANDEZ, Judge.

The issue in this appeal is whether the University of Arizona, through its president and the board of regents, can decrease the salary of a tenured professor who voluntarily resigns an administrative position to return to teaching and research. The trial court found that the university may properly do so and granted its summary judgment motion. We affirm.

Dr. Peter Franken is an internationally-known professor of physics and optical sciences who was recruited to the university in 1973 to chair the Department of Optical Sciences. Since his arrival at the university, he has also been a tenured professor. His position as Director of the Committee on Optical Sciences was three-quarter time until March 1, 1975, when it became full-time. In November 1975, Dr. Franken chose to have his salary paid on a ten-month academic year basis rather than the 12-month fiscal year basis on which he had previously been paid. As a result of that choice, his salary was decreased by one-sixth.

Effective August 16, 1983, Dr. Franken's salary was $69,131. Because of a cost-of-living adjustment the salary was raised to $72,588 in January 1984. Although he had been requested to serve as director through June 30, 1984, he apparently served as acting director of the Arizona Research Laboratories during the fall·semester of 1983 and was on sabbatical leave during the spring semester of 1984. For the 1984–1985 school year Dr. Franken returned to full-time teaching and research. His salary was reduced to $64,000.

Franken sued for breach of contract, declaratory judgment, wage discrimination and denial of a property right in his salary. He sought, among other relief, back wages and punitive damages. Franken moved for partial summary judgment on the issue of liability, and the appellees responded with a summary judgment motion as to the entire action. Franken has appealed the granting of appellees' motion.

Franken contends he must be paid his 1983–1984 salary during 1984–1985 as well because his contract did not provide for any reduction in salary upon relinquishment of the administrative duties. His Notice of Appointment for 1983–1984 is dated June 24, 1983, and states as follows:

"Your appointment has been approved as Professor of Optical Sciences and Physics with Tenure for the academic year 1983–84, effective August 16, 1983 at an annual salary rate of $69,131., of which $7,200 is to be paid from contract funds. (Contingent upon availability of funds.) Sabbatical leave is granted for the first semester of the academic year 1983–84. " 'The annual salary rate listed above is subject to a cost-of-living adjustment of 5% to be effective on January 16, 1984 as authorized by the Arizona Legislature.' "

A letter dated June 25, 1983, reads in part as follows:

"You are requested to serve as Director of the Committee on Optical Sciences at the University of Arizona, effective July 1, 1983 and ending no later than June 30, 1984.

"In accordance with the policy of the Arizona Board of Regents, this is not a contract but an academic-administrative assignment which may be terminated or renewed, in writing, by the President at his option at any time."

Two affidavits were supplied in these proceedings by former university president, John P. Schaefer. He indicated that in 1975 the university began separating administrative assignments from the appointment documents, a mechanism which permits the president to remove an administrative assignment, or for a faculty member to resign from an administrative position, without jeopardy to tenure status, departmental affiliation or salary. He also stated that the annual salary shown in the contract (Notice of Appointment) is intended to include compensation for administrative responsibilities although no breakdown for such is shown in the contract.

A section of the Arizona Board of Regents Policy Conditions of Administrative

Service, entitled "6–103 Salary Adjustments for Administrators Who Return to Faculty Positions," provides as follows:

"A. The university presidents shall inform the Board prior to final execution of an employment contract in which administrative personnel are changed to an academic assignment. The compensation to be paid for such academic assignment is subject to Board approval. (BOR 9/78)

"B. When a former university administrator who was employed on a fiscal year contract returns to an appointment as a faculty member on an academic year basis, the academic year salary shall be determined by the president on the same basis as all other academic year faculty salaries.

"1. In no case shall the former administrator have any expectation that the academic year salary shall be set by dividing the previous fiscal year contract by 1.2 or by any other numerical factor.

"2. The president shall consider the individual's academic rank, length of time in that rank, prior achievements, potential performance as a university faculty member and salaries of faculty peers in establishing the individual's academic year salary. (BOR 9/80)"

Franken contends that Section B does not apply to him because he was already being paid on an academic year basis. We agree. Nils Hasselmo, the provost of the university, testified in his deposition that it was unusual for an administrator to be paid on an academic year basis, and Franken agrees that is true. Thus, the policy addressed the usual situation. Hasselmo testified that he followed the guidelines of § 6–103(B)(2) in establishing a new salary for Franken, and we see nothing wrong with that since § 6–103(A) would apply in any event, as does the basic policy of salary adjustment in a change from an administrative assignment to an academic assignment.

Appellant contends this case is controlled by *Keiser v. State Board of Regents of Higher Education,* 630 P.2d 194 (Mont. 1981) and *Sorlie v. School District No. 2,* 667 P.2d 400 (Mont.1983). *Sorlie* is not applicable to this case because it involved the interpretation of several statutes. There are no comparable statutes involved here. Nor is *Keiser* of assistance here. In that case the Montana Supreme Court held that a director of the school of home economics with "continuous tenure" status was entitled to receive the same salary when she was involuntarily returned to a teaching position after an administrative reorganization. The difference between that case and this is that in *Keiser,* the plaintiff had been tenured as an administrator. Here, Franken is tenured only as a professor; his position as administrator was an assignment at will. Moreover, Franken voluntarily resigned the position. We can see no basis upon which to find that a voluntary return to teaching duties and the attendant relinquishment of administrative responsibilities as head of "the preeminent center for optical sciences in the country," as Franken himself has characterized it in his complaint, should result in retention of the administrative salary. Dr. Albert B. Weaver, former executive vice president of the university, stated in his deposition that in the mid-1970's the university began compensating those holding administrative positions, such as chairs of departments, at a higher rate than those who are professors. The converse of that policy, of course, is a decrease in salary when an administrator resigns the position to return to teaching.

We find no threat to the concept of tenure in our determination that Dr. Franken is not entitled to maintain his administrative salary after his return to teaching. As noted by the court in *Barnes v. Washington State Community College District No. 20,* 85 Wash.2d 90, 529 P.2d 1102 (1975), the American Association of University Professors issued a Statement of Principles on Academic Freedom and Tenure in 1940 "which made clear that the purpose of tenure is to protect the faculty member in the classroom and in scholarly research."

85 Wash.2d at 93, 529 P.2d at 1104. A university policy that an administrator is to be compensated at a higher rate than a professor does not interfere in any way with that purpose.

Simply because Dr. Franken has always been compensated at a higher rate since he was recruited for an administrative position does not mean he is entitled to the higher rate forever, especially since he voluntarily resigned from the administrative position.

We note the case of *Kirsner v. University of Miami*, 362 So.2d 449 (Fla.App.1978), in which the Florida Court of Appeal approved the district court's conclusion of law which read as follows:

"3. The fact that Plaintiff has tenure as a member of the University's faculty, does not affect the University's right to reduce that portion of his salary paid to him for performing the duties of a Department Chairman since tenure does not apply to administrative duties and positions." 362 So.2d at 451.

Franken complains that the trial court entered summary judgment on the third and fourth causes of action of his complaint as well as on the first two despite the existence of genuine fact issues on those causes of action. This is the first time that argument has been raised in this case; hence, we will not address it. *Stratton v. Inspiration Consolidated Copper Co.*, 140 Ariz. 528, 683 P.2d 327 (App.1984).

The judgment for appellees is affirmed.

BIRDSALL, P.J., and HOWARD, J., concur.