George B. DICKINSON,
Plaintiff-Appellee,

v.

AUTO CENTER MANUFACTURING
COMPANY and John W. McLeod,
Defendants-Appellants.

No. 82–2051.

United States Court of Appeals,
Fifth Circuit.

Feb. 28, 1983.

Norman J. Riedmueller, Don Fogel, Houston, Tex., Joe T. Caruso, Cocoa Beach, Fla., for defendants-appellants.

Jack W. Hayden, Houston, Tex., for plaintiff-appellee.

Before WISDOM, REAVLEY and TATE, Circuit Judges.

TATE, Circuit Judge:

The defendants, Auto Center Manufacturing Company (Auto Center) and the corporation president, McLeod, appeal from the granting of a motion for summary judgment in favor of the plaintiff, Dickinson, a discharged employee, and awarding him damages for the purported breach of an oral employment contract. After two prior appeals to this court, Auto Center and McLeod now attempt to raise the following defenses and objections to the judgment: (1) applicability of the Texas or Florida statute of frauds to bar enforcement of the oral contract, (2) lack of authority on the part of McLeod to contract for, and bind Auto Center to, the terms of the employment contract, (3) insufficient evidence to support a finding of individual liability on the part of the corporation president, McLeod, and (4) failure of consideration to support the contract. Finding (a) that issues (1) and (2), were decided adversely to Auto Center on a prior appeal and may not be re-examined because of the "law of the case" principle, and (b) that the district court erred in granting summary judgment for Dickinson in the resolution of issues (3) and (4), we reverse the district court's denial of a directed verdict as to issue (3), and we vacate the judgment of the district court as to issue (4) and remand.

*Factual Background*

The events leading up to this contract dispute have been thoroughly examined in two earlier opinions by this court, 594 F.2d 523 (5th Cir.1979) (*Dickinson I*), and 639 F.2d 250 (5th Cir.1981) (*Dickinson II*). Briefly, Dickinson moved from Texas to Florida in reliance on an alleged oral employment agreement entered into with Auto Center president McLeod in May of 1972.[1] Dickinson was allegedly promised $60,000 a year as salary and a 25% stock interest in Auto Center, the stock to be issued at a later date. In March of 1973,

---

1. McLeod's wife, Martha, has been the sole owner of 100% of the outstanding shares of stock in Auto Center Manufacturing Company at all times relevant to this dispute.

after having worked for Auto Center for nine months without the stock being issued, a second oral agreement was allegedly reached in which Dickinson was to be issued *immediately* the 25% stock interest in the company. Several months later, Dickinson was fired without ever having received the stock. Because of actions by this court on the earlier appeals, only the enforceability of this second March 1973 unwritten agreement (to issue stock immediately) is the subject of review on this appeal.

*Procedural History:*

The procedural history of this case is more complicated.

*Dickinson I:*

In the first trial in the district court, a directed verdict was granted at the close of Dickinson's case in favor of the defendants, Auto Center and McLeod. In reviewing the two agreements, both of which were at issue at that time, the district court found that Dickinson's enforcement of the earlier May 1972 agreement was barred by the Florida statute of frauds, and that enforcement of the March 1973 agreement was not barred by the Florida statute of frauds, but was not a binding contract because the agreement had not been reduced to writing as per the parties' intent.

On the appeal to this court (*Dickinson I*), we reversed the directed verdict and held that Dickinson had "sufficiently proved that a contract existed" pursuant to the second oral agreement in March of 1973, 594 F.2d at 528, that the parties' intent did not require that it be reduced to writing, *id.* at 529, and that "Dickinson also sufficiently established that defendants breached" the agreement. *Id.* We therefore remanded the case to the district court "for a new trial on the issue of defendants' liability for breaching the March 27, 1973, oral agreement." *Id.* at 530. We also specifically held that enforcement of that agreement was not barred by the Texas statute of frauds. *Id.* at 528.

*Dickinson II:*

On the remand, a jury trial was held with regard to the defendants' liability for breach of the March 1973 oral contract. In response to special interrogatories, the jury found that the terms of the contract were that 25% of the stock in Auto Center would be transferred immediately to Dickinson in exchange for $25,000 (which amount would be paid to Dickinson as a bonus by Auto Center). However, the jury found that Dickinson neither obligated himself ("other than to continue his existing employment") nor gave up anything of value as consideration for the $25,000 that would be paid to him. The district court therefore found the contract lacking in consideration and entered judgment ordering that Dickinson take nothing.[2] Pertinently to the present

---

2. The special interrogatories and jury answers were:

SPECIAL INTERROGATORY NO. 1:
Do you find from a preponderance of the evidence that George B. Dickinson and John W. McLeod and Auto Center Manufacturing Company entered into an oral contract on March 27, 1973 under the terms of which 2,500 shares or 25% of the stock of Auto Center Manufacturing Company would be issued to George B. Dickinson immediately in exchange for $25,000 to be paid by George B. Dickinson on September 30, 1973, with funds to be provided to him by Auto Center Manufacturing Company?
ANSWER: We do.
SPECIAL INTERROGATORY NO. 2:
What do you find from a preponderance of the evidence was the fair market value of 2,500 shares or 25% of the stock of Auto Center Manufacturing Co. on or about March 27, 1973?

ANSWER: $694,666.00
SPECIAL INTERROGATORY NO. 3:
Do you find from a preponderance of the evidence that George B. Dickinson obligated himself in any way, other than to continue his existing employment with Auto Center Manufacturing Company, or gave up anything of value, no matter how slight, to the benefit of John W. McLeod or Auto Center Manufacturing Company to supply the $25,000 to be paid by George B. Dickinson for the stock on September 30, 1973?
ANSWER: We do not.
With regard to interrogatories One and Two, District Court issued these instructions:
INSTRUCTION: In order to answer Special Interrogatory No. 1 'We do' you must find from a preponderance of the evidence that there was a meeting of the minds of the parties as to the terms of the agreement, by

(*Dickinson III*) appeal, the district court overruled a motion for directed verdict urged by the defendant McLeod (the president of Auto Center) directed to the complete absence of evidence to support individual liability of this corporate officer for this corporate debt. R., vol. 10, p. 578.

On the second appeal to this court (*Dickinson II*), we again reversed the district court's judgment. We specifically affirmed the jury findings as to the existence and terms of the contract, and also as to the amount of damages occasioned by its breach. 639 F.2d at 253–54. We reversed, however, finding that under Florida law, the instructions to the jury on the issue of consideration for the March 1973 contract were "wholly deficient in substance as well as in form," *Id.* at 253–54 & note 6. We noted that under Florida law, Dickinson's continued employment after March, 1973, or his continued guarantee of the debts of the corporation after that date, if credited, could constitute sufficient consideration for the contract. *Id.* at 253. We therefore reversed the district court's judgment and remanded "limited to" the issue as to "the existence or nonexistence of consideration under Florida law." *Id.* at 254. In doing so, we emphasized that a full trial might not be necessary and that summary judgment, directed verdict, or judgment n.o.v. might be appropriate. 639 F.2d at 254.

*The Present Appeal (Dickinson III):*

On the second remand to the district court, on submission of cross motions for

summary judgment (in which Dickinson introduced no affidavits or additional documentary proof), the district judge granted summary judgment for Dickinson awarding him $694,666.00 with interest and costs. The district court denied Auto Center's motion.

For the first time since this controversy arose, the defendants McLeod and Auto Center were held liable by a substantial monied judgment against them. The present appeal is the first in which they appear as appellants. The two prior appeals (*Dickinson I and II*) were taken by the plaintiff Dickinson from take-nothing judgments. The defendants did not file cross appeals from these two earlier judgments, both of which were of course completely in their favor.

## I. Dickinson I *and* Dickinson II: *"Law of the Case" and What They Decided.*

This is the third appeal arising from this litigation. With regard to the issues raised by this latest appeal, it is first necessary to examine what issues were expressly or by implication decided on the two prior appeals. Under the "law of the case" principle, a prior decision of this court (in the absence of exceptional circumstances not here present) will be followed without re-examination, both on the remand to the district court and on subsequent appeals to this court. *Doe v. Marshall,* 694 F.2d 1038 (5th Cir.1983); *Morrow v. Dillard,* 580 F.2d 1284, 1290 (5th Cir.1978).[3]

that is meant that the parties agreed to the same thing at the same time and intended to be bound by the agreement without reducing it to writing.

If you have answered Special Interrogatory No. 1 'We do' and only in that event you will answer Special Interrogatory Nos. 2 and 3.

INSTRUCTION: In connection with Special Interrogatory No. 2, you are instructed that 'fair market value' means what a willing buyer would pay and what a willing seller would accept, neither being under any obligation or compulsion either to buy or sell, and both with full knowledge of all pertinent facts.

**3.** As enunciated by *Morrow,* 580 F.2d at 1290, *quoting from White v. Murtha,* 377 F.2d 428, 431–32 (5th Cir.1967),

when an issue is once litigated and decided, that should be the end of the matter.... While the 'law of the case' doctrine is not an inexorable command, a decision of a legal issue or issues by an appellate court establishes the 'law of the case' and must be followed in all subsequent proceedings in the same case in the trial court *or on a later appeal in the appellate court,* unless [1] the evidence on a subsequent trial was substantially different, [2] controlling authority has since made a contrary decision of the law applicable to such issues, or [3] the decision was clearly erroneous and would work manifest injustice. (emphasis added).

## A. *Statute of Frauds*

Auto Center and McLeod first argue that enforcement of the oral agreement of March 1973 is barred by the Texas, or alternatively the Florida, statute of frauds provision providing that a contract for the sale of securities is not enforceable if not in writing or so confirmed.[4]

In *Dickinson I,* this court expressly held that the Texas provision "does not apply to an oral employment contract in which stock is to be transferred as a condition for the acceptance of employment." 594 F.2d at 527 n. 7. While this was particularly stated with reference to the earlier May 1972 oral agreement (not the subsequent March 1973 one here at issue), the same reasoning was implied in the court's holding that the oral agreement of March 27, 1983, although governed "by Florida substantive law", 594 F.2d at 528, was valid, and in the court's remanding "for a new trial on the issue of the defendants' liability for breaching the March 27, 1983 oral agreement." 594 F.2d at 530.

Our remand in *Dickinson I* also necessarily carried with it the rejection of Auto Center's alternative claim that the Florida statute of fraud provision barred enforcement of this March 1973 oral agreement. Although the defendants had not expressly pleaded the Florida statute, in their pre-trial order they broadened their defense to include both the Texas and Florida statutes

of fraud. R.I., p. 138. Under these circumstances, the opposing party was on fair notice of the issue, and it was before the court. *Allied Chemical Corporation v. Mackay,* 695 F.2d 854, 855 (5th Cir.1983).

Pertinently, in the judgment that was the subject of the appeal in *Dickinson I,* the district court held that the Florida (rather than the Texas) statute of frauds applied (a holding we reversed in *Dickinson I* ) and that, although the May 1972 contract was barred from enforcement by the Florida statute of frauds, the "modified" oral contract of March 27, 1973 (where the plaintiff was to receive stock immediately) was outside the Florida statute here at issue. R.I., pp. 155–157, esp. 157. The district court then held that, nevertheless, the agreement was not enforceable because it contemplated that it would be reduced to a formal writing and would not be effective until then; a holding we reversed, *Dickinson I,* 594 F.2d at 529.

Squarely before the appellate court in *Dickinson I* was the issue of whether the March 1973 oral agreement was barred either by the Florida or the Texas statute of frauds provision now relied upon in this third appeal.[5] In holding that this oral agreement and its breach were sufficiently established, 594 F.2d at 528–29, and in remanding for a new trial on the issue of the "defendants' liability for breaching the

---

**4.** Section 8.319 of the Texas Uniform Commercial Code—Investment Securities, Tex.Bus. & Com.Code states:

**§ 8.319. Statute of Frauds**

A contract for the sale of securities is not enforceable by way of action or defense unless

(1) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price; or

(2) delivery of the security has been accepted or payment has been made but the contract is enforceable under this provision only to the extent of such delivery or payment; or

(3) within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under Subdivision (1) has been received by the party against

whom enforcement is sought and he has failed to send written objection to its contents within ten days after its receipt; or

(4) the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract was made for sale of a stated quantity of described securities at a defined or stated price.

With irrelevant exceptions as to capitalization and punctuation, Section 678.8–319 ("Statute of Frauds") of the Florida uniform commercial code—investment securities, Fla.Stat. § 678.8–319 (1969) is to the identical effect.

**5.** In their arguments in brief on the initial appeal to this court (*Dickinson I* ), the parties presented and argued the issue of which statute of frauds (Texas or Florida) should or should not be applied. Appellant Dickinson's Brief at 14–21; appellees Auto Center's and McLeod's brief at 14–17; Docket No. 76–4472 of this court.

March 27, 1973" agreement, 594 F.2d at 530, we think that in *Dickinson I* we necessarily decided that neither statute barred enforcement of this March oral agreement. By reason of the "law of the case" principle, we will not re-examine the correctness of our holding in this earlier appeal, no obvious error or other exceptional circumstance being shown. The requirement under the "law of the case" that a court follow earlier decisions in the same proceedings "comprehends things *decided by necessary implication* as well as those decided explicitly." *Carpa, Inc. v. Ward Foods, Inc.*, 567 F.2d 1316, 1320 (5th Cir. 1978), citing *Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16, 19 (5th Cir.), *cert. denied*, 419 U.S. 987, 95 S.Ct. 246, 42 L.Ed.2d 260 (1974) (emphasis in original).

### B. *Authority of McLeod To Bind The Corporation*

■ Auto Center next contends that McLeod, as president of the corporation, had no authority to bind the corporation to contractual agreements relating to the sale of stock. Auto Center therefore argues that it is not bound by the terms of McLeod's March 1973 oral agreement. This contention, as well, is foreclosed by our decisions in *Dickinson I and II.*

The issue of lack of authority was first raised by Auto Center in a motion for a directed verdict at the close of the evidence in the second trial of this case, relating to Auto Center's liability on the March 1973 agreement. The district court denied the motion. The issue was next raised in a motion for a new trial, following remand per *Dickinson II*, in the third appearance in the district court. This motion, also, was denied. In the interim, however, at the close of the second trial of the case, special interrogatories and instructions were given to the members of the jury, and the jury was asked to determine whether,

George B. Dickinson and John W. McLeod and *Auto Center Manufactur-*

*ing Company* entered into an oral contract . . . .

(emphasis added) and whether

there was a meeting of the minds . . . [and] the parties agreed to the same thing at the same time *and intended to be bound* by the agreement . . . .

(emphasis added). Although McLeod and Auto Center entered timely objections to both the form and the content of these interrogatories and instructions, they did not address at that time the lack of instruction on the authority issue. The jury found that Auto Center had entered into the oral agreement of March 1973 and intended to be bound by it.

Rule 49(a) and Rule 51 of the Federal Rules of Civil Procedure provide that the failure to object to jury interrogatories or instructions will prevent a party from assigning error therein at a later time. Auto Center therefore may not now contest the sufficiency of the evidence to support the jury's finding that the corporation was a party to and intended to become bound by the agreement, on a basis it did not then assert as requiring a special interrogatory or instruction. *See Worthington Corporation v. Consolidated Aluminum Corporation*, 544 F.2d 227, 230 (5th Cir.1976) (inadequacy of "jury instructions is not properly raised on appeal by a complaint of insufficient evidence to support a jury finding"). *See also Central Progressive Bank v. Fireman's Fund Insurance Company*, 658 F.2d 377, 381 (5th Cir.1981).

■ However, even were we to entertain the issue, there is sufficient evidence in the record to support the jury's determination, under the facts of this case, that Auto Center, pursuant to McLeod's authority, became a party to the agreement. The jury could have found under these circumstances that McLeod acted with both the knowledge and approval of Auto Center throughout the period at issue. *See City National Bank of Detroit v. Basic Food Industries, Inc.*, 520 F.2d 336, 337 (5th Cir.1975) (Florida law). The evidence further suggests that McLeod's wife, Martha (sole shareholder of Auto Center's out-

standing stock and secretary-treasurer of the corporation), was present and participated in the agreement when it was made. This would likewise permit the conclusion that the actions of McLeod were permitted and acquiesced in by the corporation. *Id.*

### C. *Failure of Consideration*

■ By *Dickinson II*, the only issue remanded for trial court determination was whether under Florida law there was valid consideration for the oral contract of March 1973. 639 F.2d at 253. In that regard, we stated, "the substantially uncontradicted evidence of Dickinson's continued employment and [his] continued guarantees for financing Auto Center come close to establishing consideration as a matter of law." *Id.*

In remanding, we stated

In doing so we once again emphasize that we are not necessarily mandating a full fledged jury trial on the issue. The District Court may well have to conclude on motion for summary judgment, motion for directed verdict at the conclusion of Dickinson's case, or renewed by like motion at the conclusion of all the evidence or on motion for judgment n.o.v., that consideration is established as a matter of law.

*Dickinson II, supra*, 639 F.2d at 254.

The plaintiff-appellee Dickinson reads *Dickinson II* as authorizing and almost directing the grant of summary judgment in his favor on the issue of consideration. However, although we there stated that the evidence of Dickinson's continued employment and continued guarantees "come[s] close" to establishing consideration as a matter of law, we did not hold that this consideration was established— which is why remand was made.

On the remand, cross-motions for summary judgment (with no additional factual showing or proof) were made, based on the evidence thus far taken in the two previous trials. The district court denied the motions of the defendants and granted the plaintiff Dickinson's motion, entering judg-

ment of nearly seven hundred thousand dollars on the jury verdict.

In remanding in *Dickinson II*, we noted that the issue of consideration was to be determined under Florida law. 639 F.2d at 253. We also noted that under Florida law "continued employment constitutes adequate consideration to support a contract", and that consideration may be afforded by "any labor, detriment, or inconvenience sustained by a plaintiff at either defendant's express or implied consent." *Id.* In reversing because of inadequate jury instructions on consideration under Florida law, *id.*, we did not reach the issue of whether the facts in the present case *did* show that, as consideration for the March 1973 agreement to issue stock immediately, Dickinson did indeed agree to continue in employment and to continue his financial guaranties of the corporation's debt.

On its appeal, Auto Center argues that the evidence does not show that Dickinson furnished any consideration for the March 1973 oral agreement by Auto Center to transfer stock to him. He was already employed by Auto Center and had already signed the two guaranties for the corporation (plaintiff's exhibits 19 and 20, dated August 8, 1972 and December 14, 1972, respectively), Auto Center argues, so that its March 1973 agreement to transfer stock was in effect a gratuitous contract supported by no consideration offered, or detriment suffered, by Dickinson. Auto Center contends that, under Florida law, there must be a bargained for consideration to support a contractual agreement enforceable against the promisor. *See, e.g., Kirsner v. University of Miami*, 362 So.2d 449 (Fla.App.1978). *See also Mangus v. Present*, 135 So.2d 417, 418 (Fla.1961); *Tampa Northern R. Co. v. City of Tampa*, 104 Fla. 481, 140 So. 311, 312 (Fla.1932).

Auto Center further points out that, at the trial, Dickinson's testimony is devoid of any express discussion of whether he would continue in employment or continue his financial guaranties unless the stock was issued to him. This defendant suggests that, therefore, summary judgment

should have been granted to it. *Dickinson II* notes, however, that Auto Center did not plead the affirmative defense of "failure of consideration" as required by Fed.R.Civ.P. 8(c), although the issue may possibly have been tried by implied consent during the *first* trial (that preceding *Dickinson I*). *Dickinson II, supra,* 639 F.2d at 253. Possibly because of Auto Center's failure to defend on the ground that no consideration had been furnished by Dickinson for the agreement (its defense, rather, was that no agreement had been reached), the testimony at the second trial (that reviewed by *Dickinson II*), was directed only at whether an agreement had been made to transfer stock immediately (the jury found that it had, and we affirmed in *Dickinson II*), but it was not directed expressly or by implication to what, if anything, Dickinson had promised in return for that agreement.

In any event, the issue before us is whether Dickinson's motion for summary judgment on the issue of consideration was properly granted. A motion for summary judgment may not be granted when there are disputed issues of material fact. Fed. R.Civ.P. 56(c). All factual inferences must be resolved in favor of the opponent to summary judgment, and the factual showing construed most favorably to him. *Impossible Electronics Techniques, Inc. v. Wackenhut Protective Systems, Inc.,* 669 F.2d 1026, 1031 (5th Cir.1982).

Here, the circumstances that Dickinson did continue in his employment and did not withdraw his financial guaranties of the corporation's debt, might entitle a trier of fact to infer, under the totality of the circumstances, that Dickinson's continued employment and guaranty were the consideration furnished by him for the agreement. *See* 1 Corbin on Contracts, § 144 (1963). Further, on March 19, 1973 (shortly before the oral agreement to transfer stock, but in the course of negotiations with regard thereto), Dickinson signed guaranties of Auto Center's liability on two inventory control agreements, by which he obligated himself personally to hold the indemnitee harmless if Auto Center defaulted on its obligations under the agreement. See

plaintiff's exhibits 58 and 59. Although the testimony is not directed to whether this was in consideration for the March 1973 agreement to transfer stock, the trier of fact might well infer that the bargained-for consideration for Auto Center's March 1973 agreement to transfer stock to Dickinson was his agreement to underwrite personally these indemnity agreements so that the corporation would have the benefit not only of his services but also of his credit in its expansion efforts. Especially since neither by pleading nor by direct or cross-examination did the opposing party attempt to raise the issue that the agreement was a gratuity, we are unwilling to hold that, on the record before us, Auto Center is entitled to judgment as a matter of law on this basis, where a conflicting factual inference may well be open to a trial jury.

On the other hand, for similar reasons, we find that the district court improvidently granted summary judgment to Dickinson in the face of these conflicting inferences and the absence of express testimony that indeed consideration of the nature argued was furnished by him. The inference is possibly open to a trial jury that Dickinson's continued employment and his continued liability on the guaranties of the corporation debt—executed prior to the actual agreement—were not furnished by him as a consideration for Auto Center's agreement of March 27, 1973 to issue him stock immediately.

In support of his own motion for summary judgment, Dickinson further contends that the bargained for consideration was recognized by the court by its submission of Interrogatory 3 to the jury (*see* note 1 *supra*), which excluded "continued employment" as valid consideration. (Because of this exclusion, we found the interrogatory submitted by the district court improperly excluded from its consideration the issue of whether continued employment could constitute valid consideration. 639 F.2d at 253.) However, the instruction in question only addressed obligations *"other than"* continued employment furnished by Dickinson (see note 1 *supra*), and it does not in

terms imply as a factual matter that Dickinson *did* obligate himself to continue in his employment with Auto Center.

The district court therefore erred in granting Dickinson summary judgment on the issue of whether under Florida law valid consideration was furnished for the March 1973 agreement. Regretfully, partly due to ambiguities in expressions of this court in its decisions of *Dickinson I and II,* this issue must once again be remanded for determination by the district court. Our prior holdings establish that a valid and enforceable agreement was entered into on March 1973—if there was valid consideration under Florida law, Dickinson II, 639 F.2d at 252 (the *only* remaining issue to be decided on the remand)—, that the defendant Auto Center breached it, and that Dickinson was thereby caused damages in the amount of the jury verdict.

## II. *Individual Liability of McLeod, Auto Center's President*

■ At the conclusion of the second trial (that reviewed in *Dickinson II*), the defendant McLeod moved for a directed verdict on the ground that there was a total lack of evidence to prove his individual liability for the debt of Auto Center, the corporation of which he was president. R. 10, p. 578. The motion was overruled. McLeod reurges this contention on the present appeal. He points out, correctly, that the "law of the case" principle does not bar our considering the issue because it was never decided, either expressly or by necessary implication, in the prior appeals.

■ The plaintiff Dickinson argues, however, that McLeod waived this argument by never raising it after his motion for directed verdict was denied (except for an objection to the jury instruction in the second trial, R. 10, p. 642), either in motions for a new trial in the district court, on the appeal in *Dickinson II,* or by special pleading or other argument in the district court, on the remand following *Dickinson II.*

We find no merit to Dickinson's waiver argument.

The defendant McLeod did not waive the issue by failing to cross-appeal or to argue it on the plaintiff's appeal in *Dickinson II.* As a result of the jury finding that there was no consideration for the agreement, in response to the incorrect (as we held in *Dickinson II*) interrogatory, the district court entered a take-nothing judgment against Dickinson and in favor of McLeod and Auto Center. An appellee who does not desire a change in the decree appealed from is not required to cross-appeal in order to preserve his optional right to urge errors in a district court's ruling that would, if accepted by the appellate court, support an affirmance of the decree appealed from. *Dandridge v. Williams,* 375 U.S. 471, 475 n. 6, 90 S.Ct. 1153, 1156 n. 6, 25 L.Ed.2d 491 (1970); *Morley Construction Company v. Maryland Casualty Co.,* 300 U.S. 185, 191–92, 57 S.Ct. 325, 328, 81 L.Ed. 593 (1937); *United States v. American Ry. Express Co.,* 265 U.S. 425, 435–36, 44 S.Ct. 560, 564, 68 L.Ed. 1087 (1924); *Rickey v. United States,* 592 F.2d 1251, 1254 n. 3 (5th Cir.1979); 9 Moore's Federal Practice, ¶ 204.11[3] (2d ed. 1974); 15 Wright, Miller, and Cooper, Federal Practice and Procedure, § 3904 (1976).

■ Consonant with this principle, McLeod did not waive his right to urge that he was not personally liable on the corporation's debt through his failure to raise the issue by cross-appeal or argue it in *Dickinson II*—the appeal being by a party opponent from a take-nothing judgment in McLeod's favor. McLeod is thus free to re-urge it on the present appeal (*Dickinson III*), an appeal by him from a monied judgment for the first time against him in the tortuous course of this litigation.

The effect of our decision in *Dickinson II* was to set aside the take-nothing judgment and the jury's answer to the third interrogatory in the second trial, and to remand to the district court for further proceedings. On the remand, the district court entered a final judgment against McLeod for the first time in the course of this litigation, affording him for the first time a right of appeal. *See* 28 U.S.C.

§ 1291; 9 Moore's Federal Practice, *supra*, ¶ 110.06, ¶ 204.11[3] at p. 4–43 (A party "not aggrieved" by a judgment "cannot appeal from it").

Under the final judgment appealability rule, a party may obtain review of prejudicial adverse interlocutory rulings upon his appeal from adverse final judgment, at which time the interlocutory rulings (nonreviewable until then) are regarded as merged into the final judgment terminating the action. 9 Moore's Federal Practice, *supra*, ¶ 110.07 at pp. 108–109. *See also* James & Hazard, Civil Procedure, § 13.4 at pp. 670–71 (2d ed. 1977). The defendant-appellant McLeod is therefore entitled to raise on this appeal from final judgment his contention that the district court erred in its interlocutory order that overruled his motion for a directed verdict at the close of evidence.

The motion raised the issue that no evidence supported his personal liability for the corporation's debt for which he was cast. McLeod contends that he acted only as the agent of the corporation of which he was president (Auto Center) in making the contract of March 1973 for the transfer to Dickinson of corporation stock. This contention is based on the "well settled [rule] that an agent contracting on behalf of a disclosed principal, and within the scope of his authority as agent, cannot be held liable" for the principal's debt. *Smith v. Platt Motors, Inc.*, 137 So.2d 239, 242 (Fla. App.1962); Restatement (Second) of Agency, § 320 (1958).

McLeod's motion for directed verdict, re-urged by his appeal, questions the total lack of evidence to support a holding that his confection of the agreement of March 1973 was in any other capacity than as agent (president) of the corporation. A directed verdict cannot be sustained at trial or on appeal unless there is a lack of substantial evidence to support a jury verdict ("evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions", *Dickinson I*, 594 F.2d at 526), viewing the testimony most favorably to the party opposing the motion. *Id.* Applying this stringent test, we nevertheless find that the district court erred in overruling McLeod's motion for directed verdict.

No evidence in the record could support a finding that McLeod was acting in an individual capacity so as to be personally bound by the agreement of March 1973 that he negotiated on behalf of the corporation. The evidence is uncontroverted that Dickinson first began his association with the McLeods when he performed some accounting work for their company and aided them in incorporating. He learned soon afterward that McLeod had taken the position of president, and that McLeod's wife was the secretary-treasurer and sole shareholder. Dickinson was fully aware of the corporate structure and of the positions of each of the parties. Pursuant to negotiations with McLeod, Dickinson moved to Florida to work for the corporation. He was to be issued stock by the corporation, and he recognized that McLeod's wife, as sole shareholder, would be required to participate in any binding agreement to transfer Auto Center stock. From the evidence, we can infer only that Dickinson recognized McLeod's agency status as president of the corporation, that he did not expect McLeod to be personally bound by the agreement and that he considered his contractual relationship to be with the corporation rather than with McLeod, the individual. Indeed, there is no evidence to support a contrary interpretation.

Accordingly, under the evidence, the defendant-appellant McLeod cannot be held personally liable to the plaintiff Dickinson; the district court erred in denying his motion for directed verdict at the close of the evidence and McLeod is entitled to reversal of the judgment against him and to dismissal of Dickinson's claim against him individually.

*Conclusion*

For the reasons stated: we VACATE the judgment of the district court, and we REMAND for further proceedings limited to

determining whether there was valid consideration under Florida law for Auto Center's oral agreement of March 1973, in accordance with the views above stated; and we REVERSE the judgment against the defendant McLeod individually and REMAND with instructions that the suit against him be dismissed. Each party to pay his own costs of the appeal.

VACATED AND REMANDED IN PART: REVERSED IN PART.