Winston S. MORRIS, Executor of the Estate of Robert Taylor Morris, Deceased, Plaintiff-Appellant,

v.

The LTV CORPORATION, Defendant-Appellee.

No. 82–1715.

United States Court of Appeals, Fifth Circuit.

March 2, 1984.

Walker, Charfield & Doan, Timothy L. Bouscaren, Matthew Jay Lane, Cincinnati, Ohio, for plaintiff-appellant.

Rain, Harrell, Emery, Young & Doke, Morris Harrell, Robert W. Jordan, Dallas, Tex., for defendant-appellee.

Before CLARK, Chief Judge, GARZA and JOLLY, Circuit Judges.

GARZA, Circuit Judge.

## I.

### FACTS

Robert Taylor Morris, plaintiff/appellant, was a real estate broker in Mexico. On February 28, 1977, he received a letter from LTV authorizing him, on a nonexclusive basis, to obtain a buyer for the Hyatt Regency Hotel in Acapulco, Mexico. LTV owned the Hyatt and appellant claims LTV had been trying, without success, to sell it during the ten years prior to 1977. Morris' authorization expired on April 30, 1977. On May 16, 1977, Morris notified LTV that he had a bonafide buyer. On May 19, 1977, LTV sent Morris two letters. These letters authorized Morris, on a nonexclusive basis, to offer the hotel for 31.5 million U.S. currency. One letter stated that Morris' authorization to offer the hotel expired on June 30, 1977, and that Morris would be paid a commission of five percent of the stated purchase price if the sale closed during the stated authorization period (which could be extended in writing). Morris was not required to conduct or to participate in negotiations. These agreements were accepted by the plaintiff in writing and returned to LTV. By a letter dated May 30, 1977, Morris formally offered the property to Dr. Velasco and Banca Serfin, the group he represented.

On July 15, 1977, Morris gave written notice to LTV's chairman, Paul Thayer, re-

questing an extension of his authorization, which had expired. Although LTV never acknowledged this letter, Morris continued to seek a buyer and keep in contact with LTV and Banca Serfin officials.

On July 25, 1977, Morris met with Dr. Velasco and Mr. Jorge Morales Trevino, Director of Financiera Aceptaciones, S.A. (part of Banca Serfin and a subsidiary of VISA). VISA is a large conglomerate that owns 77.8 percent of Banca Serfin and which eventually bought the hotel. Velasco and Trevino said they were interested in the hotel and asked Morris to call LTV and have them send a representative for negotiations. On August 2, 1977, Bennett Corley, LTV's representative, had a formal meeting with Trevino, Coppel and Morris in Mexico. During the last week in August of 1977 Morris visited Mr. Paulos at LTV's offices in Dallas. Morris asked Paulos about the letter he sent requesting an extension of his authorization. Morris claims that at this time he was encouraged by Mr. Paulos to keep working on the sale and to write Mr. Paulos if he obtained any other possible buyers.

After telephone conversations between Corley and Dr. Velasco, the latter flew to Dallas on September 7, 1977, for detailed meetings with LTV employees. Dr. Velasco made Corley an offer for the hotel in November of 1977 but it was rejected as insufficient. Appellee argues that the offer made by Trevino was only on behalf of Banca Serfin, not VISA. After this offer was rejected Banca Serfin ceased its efforts to purchase the hotel.

In late 1977 Morales Trevino introduced Jack Pratt to Mario Mora, director of VISA. The trial court found that Mora was unaware that the hotel was for sale until he talked with Pratt. Pratt set up a meeting between Mora and Corley for the purpose of discussing the sale of the hotel. Up until late February Morris continued to keep in touch with Dr. Velasco and Mr. Corley, sometimes relaying messages about prices and financing. After February 27, 1978, LTV refused to return Morris' calls. On April 6, 1978, VISA and LTV reached oral agreement for the sale of the hotel. On April 14, 1978, LTV accepted a letter of agreement for the sale of the hotel. Appellee paid Jack Pratt $351,000 dollars for his efforts.

## II.

### ISSUES

Appellant presents four points of error involving the district court's memorandum opinion. First, appellant argues that the trial judge incorrectly held that the Statute of Frauds provision of the Texas Real Estate License Act barred his claim. Second, he contends that the trial judge failed to recognize that even if the Statute of Frauds is applicable, the plaintiff's action falls within exceptions to the statute. Third, appellant claims that the trial judge improperly excluded critical documents necessary to prove his action. Finally, appellant maintains that the trial judge misapplied Mexican law (which governs the substantive issues at dispute in this case). We find that none of appellant's contentions justify reversal of the trial court's opinion.

Appellant contends that the district court erred in holding that the Statute of Frauds provision of the Texas Real Estate License Act barred his claim. Appellant agrees that since the Texas Real Estate License Act, if applied, would determine the outcome of this suit, it is therefore a substantive question and the trial court, which was sitting in diversity, was correct in applying substantive state law. Appellant also notes that in determining which of the competing bodies of state substantive law is applicable in this suit, the district court was correct in applying the Texas conflict-of-laws rules. Texas conflict-of-laws rules require application of foreign law if such law is characterized as substantive instead of procedural by Texas courts. Although appellant agrees with this point of law he claims that the trial court incorrectly held that Texas courts have viewed the Statute of Frauds as a substantive matter.

The starting point of our analysis is, of course, *Erie R.R. Co. v. Tompkins,* 304 U.S.

64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), which held that except in matters controlled by federal law, when federal court jurisdiction is based upon diversity of citizenship a federal court must apply the substantive law of the state in which it is sitting. In *Maryland Casualty Co. v. Williams,* 377 F.2d 389, 393 n. 1 (5th Cir.1967), this court noted that:

there are really two substantive-procedural rules to be applied in a federal suit where jurisdiction rests upon diversity of citizenship and there is a conflict of laws problem.

In the first of two-step procedure, the federal court must decide whether the case, under the teachings of *Erie,* involves issues which are substantive. Substantive in this context means that the state law applicable to the issue or issues of the suit would significantly affect the outcome of the suit. If so, the federal court must apply the applicable state law on these issues, *Guaranty Trust Co. of New York v. York,* 326 U.S. 99, 109, 65 S.Ct. 1464 [1470], 89 L.Ed. 2079 (1945), and will follow its own rules of procedure.

Since application of the Texas Real Estate License Act would significantly affect the outcome of this suit and since we are faced with a conflict-of-laws problem, we move on to the second step of the analysis recommended in *Maryland Casualty, supra,* where we decide which state law we are to follow.

■ When, in a conflicts case like the one at bar, a question arises as to which substantive state law should be applied, a federal court must apply the conflict-of-laws rule of the state in which it is sitting. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). *See also Day & Zimmermann, Inc. v. Challoner,* 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975); *Maryland Casualty Co. v. Williams,* 377 F.2d 389, 393 n. 1 (5th Cir. 1967). In *Griffin v. McCoach,* 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481 (1941), decided the same day as *Klaxon,* the Supreme Court held that a federal court in Texas sitting in diversity must follow the Texas conflicts

rule even though applying the rule would bar the plaintiff's recovery.

■ The general conflict-of-laws rule in Texas is that "questions of substantive law are controlled by the laws of the state where the cause of action arose, but ... matters of remedy and of procedure are governed by the laws of the state where the action is sought to be maintained." *State of California, Department of Mental Hygiene v. Copus,* 158 Tex. 196, 309 S.W.2d 227, 230 *cert. denied* 356 U.S. 967, 78 S.Ct. 1006, 2 L.Ed.2d 1074 (1958) (citing *Home Ins. Co. v. Dick,* 15 S.W.2d 1028 (Tex.Com. App.1929) *rev'd on other grounds* 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926 (1930)).

■ Both parties agree with the foregoing analysis, their dispute concerns how Texas courts have characterized the nature of section 20(b). We now examine Texas courts' holdings in this area. In *Hutchings v. Slemons,* 141 Tex. 448, 174 S.W.2d 487 (1943), the Texas Supreme Court held with regard to the predecessor of section 20(b) that "[t]he Statute of Frauds ... does not render void or illegal a promise or contract within its terms. The statutes establish a rule of evidence." *Id.* 174 S.W.2d at 490; *see also Hall v. Hard,* 160 Tex. 565, 335 S.W.2d 584, 589 (1960) (recognizing that section 19 of the Real Estate License Act denies the *use of the courts* when not complied with, as opposed to rendering the contracts unenforceable). *Hutchings* is still good law and has been cited for the proposition that section 20(b) of the act merely establishes a rule of evidence. *Castrejana v. Davidson,* 549 S.W.2d 466, 468 (Tex.Civ. App.—Austin 1977, no writ); *Paine v. Moore,* 464 S.W.2d 477, 479 (Tex.Civ.App.— Tyler 1971, no writ).

Texas courts have recognized that "matters of evidence are procedural in nature and, in situations involving conflict-of-laws, the law of the forum in procedural matters applies." *E.g. Paine,* 464 S.W.2d at 479. In a conflict-of-laws context this court has also recognized that Texas courts consider the Statute of Frauds to be procedural and would apply the Texas Statute of Frauds in conflicts cases. *Dickinson v. Auto Center*

*Mfg. Co.,* 594 F.2d 523, 527 n. 7 (5th Cir. 1979) (citing *Paine v. Moore, supra*).

In a brief filed in the trial court appellant admitted that "Texas ha[s] classified Statutes of Frauds as procedural for conflict-of-law purposes." Rec. vol. I, at 57. Appellant now cites antiquated Texas cases and argues that the emerging rule followed by the majority of prominent commentators is that the Statute of Frauds is substantive for conflict-of-laws purposes. We need not pause to reflect on the wisdom of a rule that may or may not be emerging elsewhere because the characterization adopted by the state courts where the federal court is sitting is "conclusive upon the federal court." *Maryland Casualty Co.,* 377 F.2d at 393 n. 1 (citing *United Airlines, Inc. v. Wiener,* 335 F.2d 379, 391 (9th Cir.) *cert. dismissed,* 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964).

Since we find the Texas courts characterize section 20(b) and similar Statute of Frauds provisions as procedural the district judge was correct in applying section 20(b) to the case at bar.

■ Appellant's second point of error is that the trial judge failed to recognize that the plaintiff's claim falls within exceptions to the Statute of Frauds, even if section 20(b)[1] is applicable. Appellant contends that a letter sent by Morris to Thayer and initialed by Thayer and another LTV employee constitutes a letter/memorandum sufficient to defeat the Statute of Frauds defense. Morris wrote Thayer on July 15, 1977, and requested an extension of his authority to sell the hotel. On the top right of the letter the following appears: "~~James Paulos~~ Pls see me on this one. /s/ PT." On the bottom right hand corner is a date and time stamp indicating that J.J.P. received the letter on August 2, 1977. Above

the stamp is a notation that reads "talked to RTM late August. Before he offers property to anyone else, he will check with BC or JPP" /s/ JPP. Appellant opines that this writing, when read in conjunction with the parol testimony of Morris elucidates its meaning such that it satisfies the Statute of Frauds. We disagree. In interpreting the almost identical predecessor to section 20(b)[2] the Supreme Court of Texas stated in *Dracopoulas v. Rachal,* 411 S.W.2d 719 (Tex.1967) that:

> "Parties to a written contract that is within the provisions of the statute of frauds: ... may not by mere oral agreement alter one or more of the terms thereof and thus make a new contract resting partly in writing and partly in parol, the reason for the rule being that, when such alteration is made, part of the contract has to be proven by parol evidence, and the contract is thus exposed to all the evils which the statute was intended to remedy."

*Id.* at 721 (quoting *Robertson v. Melton,* 131 Tex. 325, 115 S.W.2d 624 (1938)).

In *Cohen v. McCutchin,* 565 S.W.2d 230 (Tex.1978), the Texas Supreme Court stated that the Texas Statute of Frauds found at Tex.Bus. & Com.Code Ann. § 26.01 (Vernon 1968), "requires that, with respect to the agreements defined therein, there must be a written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement, so that the contract can be ascertained from the writings without resorting to oral testimony." *Id.* at 232. We hold that under Texas law the July 15 letter/memorandum coupled with Morris' parol testimony is insufficient to create a contract outside section 20(b). At trial

---

**1.** "An action may not be brought in a court in this state for the recovery of a commission for the sale or purchase of real estate unless the promise or agreement on which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged or signed by a person lawfully authorized by him to sign it." Tex.Rev.Civ.Stat.Ann. art. 6573a § 20(b) (Vernon Supp.1982).

**2.** The statute considered by the court read: "No action shall be brought in any court of this State for the recovery of any commission for the sale or purchase of real estate unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereto lawfully authorized." Tex.Rev.Civ. Stat.Ann. art. 6573a § 22 (Vernon 1939).

Paulos unequivocally testified that he granted no oral extensions after receiving Morris' letter requesting an authorization extension. Even assuming that Morris' testimony properly elucidates the letter/memorandum and that a Texas Court would consider such parol evidence, it is amply rebutted by Paulos' testimony, which the trial judge obviously found more credible than appellant's testimony.

Appellant also contends that appellee is promissorily estopped from asserting the Statute of Frauds. Appellant's interpretation of the law in this area is incorrect and its reliance on *"Moore" Burger, Inc. v. Phillips Petroleum Co.,* 492 S.W.2d 934 (Tex.1972) is misplaced. On motion for rehearing the court clarified its position by noting that "[t]he promise which is determinative here is the promise to sign a written agreement which itself complies with the statute of frauds." *Id.* at 940. The court also noted the limited number of circumstances in which promissory estoppel precludes a Statute of Frauds defense, including the requirement of reliance on a *promise to sign* the memorandum which is necessary to satisfy the Statute of Frauds. *Id.* at 937–38, 940. This court has recognized the limited use of promissory estoppel in this area. In *Dickinson v. Auto Center Mfg. Co.,* 594 F.2d 523 (5th Cir.1979), we noted that under Texas law "The doctrine precludes a Statute of Frauds defense only when a party has relied to his or her detriment on 'a second promise—a promise to reduce the first promise to writing.' " *Id.* at 528 (quoting *21 Turtle Creek Square, Ltd. v. New York State Teachers' Retirement System,* 432 F.2d 64, 65 (5th Cir.1970), *cert. denied,* 401 U.S. 955, 91 S.Ct. 975, 28 L.Ed.2d 239 (1971). The trial judge's decision to reject plaintiff's theory of promissory estoppel was correct and will not be disturbed on appeal.

Plaintiff claims in his third point of error that the trial judge improperly excluded documents critical to prove his action. The trial judge excluded two letters written by Trevino and Dr. Velasco, Banca Serfin officials, which were offered to prove (1) that

at the May 30, 1977, meeting Morris offered the hotel to Banca Serfin *and* VISA (the parent company who finally purchased the hotel) and (2) that VISA purchased the hotel based on information Morris provided to Banca Serfin.

Appellee argues that although both letters were adopted in depositions by their authors they should be excluded as double hearsay because the authors of the letters had no personal knowledge of the assertions made in the letters. Appellee argues that at best the letters are "authentic hearsay."

The letter from Trevino, plaintiff's exhibit 33(b), should have been admitted because it contains information within the personal knowledge of its author, who testified that the information in it was true. *See* Trevino depo., at 66–68. We need not belabor this issue because even though 33(b) was admissable, the judge's failure to admit it into evidence is harmless error. Trevino's letter is far from conclusive and contains only vague speculations as to whether or not appellant contributed to the sale. Moreover, the significance of the letter is further limited by the fact that Trevino testified later that the letter was written with "liberal language to a friend" and did not constitute "a firm commitment . . . with any legal finality." Record vol. 10, at 160–61. In addition, Trevino was not an employee, officer or director of VISA and his testimony revealed that he had no knowledge of any negotiations between LTV and VISA. Record vol. 10, at 348–49, 354. Therefore, admission of the letter would not make clearly erroneous Finding of Fact V, in which the trial judge found that: "[t]he sale of stock would have occurred regardless of any efforts by plaintiff. There was no direct relationship between plaintiff's efforts in contacting Banca Serfin and the purchase of stock by VISA." *Id.*

The letter from Dr. Velasco, plaintiff's exhibit 33(c) contains some hearsay statements and should have been partially excluded. The letter reads in part:

Banca Serfin concluded all the above mentioned surveys and studies, which were later submitted to the consideration

of Valores Industriales, S.A., in Monterrey, State of Nuevo Leon, Mexico, so that they, in turn, could analyze such investment possibilities.

*It is our understanding* that Valores Industriales participated in an interview with Mister Bennett Corley, towards initiating business discussions relating to the purchase of the above-mentioned Hotel. Accordingly, Valores Industriales submitted an offer to LTV, which offer is currently under consideration and study. Plaintiff's exhibit 33(c) (emphasis added). The second quoted paragraph was properly excluded because Dr. Velasco admitted that it was untrue and that he was merely speculating. Dr. Velasco depo., at 58. The first quoted paragraph, however, is not hearsay. Dr. Velasco testified that it was correct, *Id.* at 59, and that he sent VISA the documents Banca Serfin had accumulated while investigating the purchase of the Hotel. *Id.* at 58. We also note that this testimony is corroborated by Trevino who stated that VISA asked for the documents and that Trevino and Dr. Velasco sent them. Trevino depo., at 62. This evidence is significant when considered with the fact that Banca Serfin officials testified that the company could not have purchased the Hotel without VISA's special permission. Indeed it seems odd that VISA would request the documents unless it had been aware of or directing the purchase efforts of its subsidiary. Nevertheless, such evidence and inferences are not enough to hold Finding of Fact V clearly erroneous. Consequently even though all of 33(b) and part of 33(c) should have been admitted, appellant has failed to prove that such errors were substantial and that they prejudiced his case. *See Ruiz v. Estelle,* 679 F.2d 1115, 1129 (5th Cir.1982), *amended in part on other grounds and va-*

*cated in part on other grounds,* 688 F.2d 266 (5th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1438, 75 L.Ed. 795 (1983).

All parties to this suit agree that the judge was correct in holding that the law of the Republic of Mexico governs the substantive issues in this case. Appellant's final point of error, however, is that the trial judge misinterpreted Mexican law.

■ By a letter dated September 20, 1978, plaintiff's exhibit 37, LTV extended Morris a $50,000 dollar settlement offer. Appellant contends that under Mexican law a defendant's settlement offer constitutes a conclusive and binding admission of the defendant's liability. Applying Rule 408 of the Federal Rules of Evidence[3] the trial court excluded LTV's settlement letter. Appellant argues that "the offer of compromise was not introduced as an admission by Defendant of the validity or invalidity of Plaintiff's claim. This letter was being introduced to prove only that the offer was made. Under Mexican law, the making of an offer is a concession that the Defendant is liable to the Plaintiff for the full amount of the suit." Appellant's brief, at 32. Appellant's argument is nothing more than a poor performance of semantic gymnastics. Rule 408 is designed to prevent exactly what appellant seeks to do—prove liability of the defendant by introducing evidence of a compromise or settlement offer. It makes no difference whether such an offer may or may not constitute a binding admission under substantive Mexican law. Evidentiary questions are procedural in nature and governed by the law of the forum. *See Paine v. Moore,* 464 S.W.2d 477, 479 (Tex. Civ.App.—Tyler 1978, no writ). As Wright, Miller and Cooper have noted: "[i]f a Rule of Evidence covers a disputed point of evi-

---

**3.** Rule 408 provides that:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise

not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

dence, the state law is pertinent only if and to the extent the Rule makes it so." C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure*, § 4512, at 190 (1982). Moreover, we note that since Congress directly enacted the Rules of Evidence their validity with regard to state law and *Erie* principles is even greater than that of the Rules of Civil Procedure *Id.* at 192. Since Rule 408 bars admission of the settlement offer we need not discuss the merits of appellant's interpretation of Mexican law; we have significant doubts, however, that a settlement offer constitutes a binding admission under Mexican law.[4]

■ Next, appellant argues that the trial judge erred by finding that the parties to this suit entered into a *mediacion*[5] agreement not a *mandato*.[6] Appellant maintains that the parties entered into a *mandato* and that since he fulfilled the obligations under that agreement he is entitled to a commission. We agree with the trial court's ruling that the parties entered into a *mediacion*,[7] but even if they formed a *mandato* we note that appellant failed to fulfill all of the obligations under the *mandato*, and thus is not entitled to receive a commission. Appellant admits that a *mandato* is a contract that is fulfilled "when the agent performs the acts agreed." Appellant's brief, at 35. The agreement between Morris and LTV promised a "commission upon *closing of a sale during* the above period of authorization, or such extensions as we agreed [sic]

to in writing...." Plaintiff's exhibit No. 8. Appellant's commission expired June 30, 1977, well before the closing date. Appellant contends, however, that the May 30, 1977, offer of $31.5 million dollars he conveyed to Banca Serfin officials resulted in VISA's final purchase for $22.0 million dollars. Appellant is incorrect because his efforts had no connection with VISA's decision to purchase the hotel. Finding of Fact V, Conclusions of Law G, I.

Appellant contends that the portion of the agreement limiting the award of a commission to the period of closing is void under Mexican law as a unilateral option and must be stricken from the agreement. In the alternative he argues that even if this clause was legal his authorization did not expire because his *mandato* was orally renewed. We need not pass on these questions because even if we do strike the closing time requirement from the agreement, appellant is still not entitled to a commission. Such a result is mandated because the trial court held in Finding of Fact V that appellant never communicated an offer to VISA and he was not a procuring cause of the sale, a finding that is not clearly erroneous.

■ Appellant's final argument is that under the Mexican law principle of *gestion de negocios* he is entitled to compensation. Citing three articles in the Mexican Civil Code appellant contends that the principle provides that if a person performs acts on

4. In support of its contention appellant proffers the testimony of its hired expert and cites only one case, a 1958 Mexican Supreme Court decision, *Sotero Cuevas,* 399/57, Sexta Epoca, vol. VII, 4th pt. p. 100 (Jan. 10, 1958). Appellant's own expert, however, has admitted the limited applicability of *Sotero Cuevas* to the case at bar. Record vol. 7, at 107.

Advantageous methods for proving foreign law in federal courts are examined in detail by noted scholar Hans W. Baade, at Baade, *Proving Foreign and International Law in Domestic Tribunals,* 18 VA. J.I.L. 619 (1978).

5. A *mediacion* is an agreement where one party attempts to bring parties together and facilitate an agreement between them. Barrera Graf. br. *La Representacion Voluntaria en Derecho Privado,* Mexico, UNAM 1967, at 39.

6. Mexican Civil Law establishes that: "Mandate [mandato] is a contract whereby the mandatory [agent] binds himself to carry out for the account of the mandator [principal] the legal acts that the latter entrusts to him." Mexican Civil Code, art. 2546.

7. Conclusion of Law F. The Mexican Supreme Court of Justice has stated that the mediator under a *mediacion* is authorized to find a purchaser and not to perform acts of domain or act with a power of attorney. *Roberto Lopez Moran y Orto* 4622/1974 3 a Sala Boletin No. 15, al Seminario Judicial de la Federacion p. 46 3a Sala Informe 1975, 2 a Parte, p. 66 (March 5, 1975). The letter sent to Morris on May 19, 1977, makes it clear that he was authorized to find purchasers, but not *negotiate* as to price or terms. *See also* Finding of Fact B.

behalf of and for the benefit of another person and that person takes advantage of and receives the benefit of those acts, then the actor is entitled to the compensation for the benefit bestowed.[8] Appellant passionately argues that:

> This suit involves the classic situation of trying to beat out the broker by feigning a sale to a brother-in-law. By saving a significant commission the seller could obviously find a lower sales price more palatable. In the case at bar, Robert Taylor Morris spoke with Jaime Garza Salinas, whose family owned VISA. He told Robert Taylor Morris to contact two men who worked for VISA subsidiaries, Dr. Jesus Velasco and Mr. Jorge Morales Trevino.... Just as LTV illegally owned the Hyatt Hotel in the first place by setting up a string of dummy corporations to evade Mexican law ... so LTV is now contending that ... Morris' transactions were only with a subsidiary corporation of VISA and not with VISA itself....

Appellant's Reply Brief, at 10–11.

We are sympathetic to appellant's position because Paul Thayer and other LTV officials never contacted Morris even though Morris called and wrote many times and LTV knew that Morris was still trying to sell the hotel after his authorization had expired. Finding of Fact O. While such actions might be unethical and unprofessional we are constrained by the trial court's fact findings to conclude that appellant did not establish the facts necessary to recover for unjust enrichment or the like under the Mexican law.

Article 1882 of the Mexican Civil Code provides that: "[h]e who without cause enriches himself to the detriment of another is obliged to indemnify the latter for the latter's impoverishment to the extent he enriched himself." Mexican Civil Code art. 1882. Plaintiff has failed to meet his burden of proof on this issue, as with others in this case. The trial judge found that Mor-

ris was not the procurring cause of the sale, that VISA officials did not know of Morris, and that the sale would have occurred independent of Morris' efforts. Since the trial court's findings reveal that Morris conferred no enrichment or benefit upon LTV, we are constrained to conclude that he is not entitled to recovery under art. 1882.

Article 1896 of the Mexican Civil Code governs the doctrine of *gestion de negocios,* and provides that: "[h]e who without a mandate and without being obliged to do so undertakes a matter of another must act in accordance with the interests of the owner of a business." Mexican Civil Code art. 1896. Appellant cannot avail himself of art. 1896 because it requires that a *mandato* exist. As noted earlier, the parties to this suit did not enter into a *mandato,* but a *mediacion.* Consequently, under Mexican law, appellant is not entitled to recover on the theories of *gestion de negocios* or *enriquecimiento ilegitimo.*

Since the trial court's conclusions of law regarding Mexican law are correct, and his findings of fact are not clearly erroneous the decision of the trial court is

AFFIRMED.

---

**8.** Appellant incorrectly assumes that articles 1882, 1896 and 1906 establish the concept of *gestion de negocios.* These articles concern two separate doctrines; *enriquecimiento ilegitimo* and *gestion de negocios.*