Damian AMONFO, et al.

v.

Alvin Huey TATE, et al.

Civ. A. No. 84–2495.

United States District Court,
E.D. Louisiana.

Dec. 10, 1985.

failed to show substantial similarity in the two works, and, therefore failed to show any likelihood of confusion.

Michael L. Lash, Porobil, Maguire & Lash, New Orleans, La., for plaintiff.

John C. Tollefson, Bienvenu, Foster, Ryan & O'Bannon, New Orleans, La., for defendant.

## MEMORANDUM OPINION

MENTZ, District Judge.

### I.

#### *Jurisdiction*

This action arises out of an intersectional collision between an automobile driven by plaintiff, Chukwugmeka Amonfo ("plaintiff"), and a truck driven by defendant, Alvin Huey Tate, an employee of defendant, AAA Cooper Transportation Company, Inc., which is insured by defendant, Transport Insurance Company ("defendants"). All of the defendants were diverse in citizenship from plaintiff and the amount in controversy exceeded $10,000.00. Accordingly, the Court was properly vested with jurisdiction in accordance with 28 U.S.C. § 1332. Mr. Amonfo is a Nigerian national who received a Master's degree at Tulane University in the public health field.

### II.

#### *Background*

The collision which formed the basis of this lawsuit occurred on January 11, 1984 when the automobile driven by plaintiff was struck by defendants' truck at the intersection of Martin Luther King Blvd. and South Claiborne Avenue in New Orleans, Louisiana. Before the Court were issues involving negligence in terms of what transpired at that intersection, liability for resultant personal injuries and property damage and allegations by plaintiff that he suffered a severe mental injury as a direct result of the collision. On May 9, 1984, the Court conducted a bench trial of this matter.

About one month prior to trial, plaintiff asserted a claim for psychological depression which he contended was a result of the collision. However, the possibility existed that other factors, including a failed marriage and a grain export enterprise which never came to fruition, might have caused or contributed to plaintiff's alleged depression. The Court was further concerned by the stuporous condition of plaintiff during examination at trial, and his inability to behave in a lucid and coherent fashion at that time. In order that these questions might be resolved, Mr. Amonfo was referred by the Court to Dr. Charles R. Smith, M.D. for psychiatric evaluation. Af-

ter completing his examinations of plaintiff, Dr. Smith issued a medical report and was deposed by the parties.

Based on the pleadings, evidence produced at trial, post-trial discovery, and the applicable law, the Court now gives written findings of fact and conclusions of law which resolve this matter.

### III.

### *Findings of Fact*

### (1)

On January 11, 1984, a collision occurred at the intersection of Martin Luther King Blvd. and South Claiborne Avenue in the Parish of Orleans, State of Louisiana. The collision occurred between the Ford LTD automobile owned and operated by plaintiff, and a tractor trailer operated by defendant, Alvin Huey Tate, and owned by defendant, AAA Cooper Transportation, Inc. At the time of the accident, Alvin Huey Tate was insured with a policy of automobile liability insurance coverage through defendant, Transport Insurance Company.

### (2)

The accident giving rise to this lawsuit occurred at approximately 1:30 p.m. on January 11, 1984. It was a clear, dry day and the road surface was dry. Both Martin Luther King Blvd. and South Claiborne Avenue are divided roadways;[1] the former runs roughly north/south and the latter east/west.

### (3)

Just prior to the accident, plaintiff was stopped at a red light in the south bound lane of King Blvd., in the South Claiborne Avenue median. When the traffic light changed from red to green, plaintiff had to traverse the three eastbound lanes of South Claiborne Avenue before continuing southbound on Martin Luther King Blvd. Plaintiff had the green light southbound at the moment of collision and had the right of way over eastbound drivers on South Claiborne Avenue who were required to stop for the red light at the intersection. When the traffic light for the southbound lane of Martin Luther King Blvd. turned green, plaintiff traversed two of the eastbound lanes of traffic on South Claiborne Avenue. Upon entering the third eastbound lane (the one farthest from the median), plaintiff's vehicle was struck by the truck driven by defendant Alvin Huey Tate.

### (4)

Defendant Tate disregarded a red light controlling the flow of eastbound traffic on South Claiborne Avenue and collided with plaintiff's automobile. The accident[2] was caused solely by the negligence of defendant Tate in failing to stop for the red light at the intersection of Martin Luther King Blvd. and South Claiborne Avenue.

### (5)

The impact from the collision caused substantial damage to plaintiff's automobile, amounting to $3,165.00. This damage was suffered when the front of defendant's truck struck the right side of plaintiff's automobile in "broadside" fashion.

### (6)

Although testimony at trial indicated that the witness Keith Johnson (in the northbound lane of Martin Luther King Blvd. at the time of the collision) refrained from entering the intersection for fear that defendant's truck would not stop, no evidence was adduced which would indicate

---

1. At this intersection, Martin Luther King Blvd. is a divided, four-lane roadway and South Claiborne Avenue is a divided, six-lane roadway. A large, grass-covered "neutral ground" or median exists in the center of South Claiborne Avenue and separates east from westbound traffic on that avenue. Martin Luther King Blvd., which has a narrow median between north and southbound traffic, intersects the large median at South Claiborne Avenue.

2. The plaintiff's witness, Keith Johnson, observed the defendant's truck from his vantage point at Martin Luther King Blvd.'s northbound lane on the south side of South Claiborne Avenue intersection. He testified that the truck was travelling at an estimated 35 to 40 mph and locked its brakes in an effort to stop. The impact of the collision knocked plaintiff's automobile about 60–70 feet into the northbound lane of Martin Luther King Blvd.

that plaintiff was even aware of the truck until after the collision. The Court does not find plaintiff negligent for reason that the evidence indicates he did nothing other than enter an intersection after a "green" traffic light gave him the right of way. Further, no testimony or evidence presented at trial showed any want of driving skills or imprudent action on plaintiff's part.

(7)

Immediately after the accident, plaintiff was taken to Charity Hospital's emergency room, treated and released. Charity Hospital's bill amounted to $150.00.

(8)

Plaintiff was seen by Dr. D.S. Condie from January 16, 1984 through January 30, 1984, and was diagnosed and treated for cervical strain and lumbar strain. Dr. Condie's total bill for treatment amounted to $675.00.

(9)

Plaintiff was subsequently treated by Dr. Milton Rosenkrantz, who initially diagnosed plaintiff as having cervical disc syndrome with radiative pain and lumbar disc syndrome with sciatic problems. As no bone fractures were visible in x-ray photographs taken on the day of the accident by Charity Hospital, Dr. Rosenkrantz ordered an electromyelogram in order to confirm or rule out disc involvement or nerve root injury.[3]

(10)

On March 22, 1984, an electromyelogram was conducted on plaintiff and its results were negative for both nerve root involvement and disc injury. On May 21, 1984, Dr. Rosenkrantz changed his diagnosis of plaintiff from cervical/lumbar disc syndrome to cervical/lumbar strain. This change in diagnosis was occasioned by the negative electromyelogram and a showing of definite improvement of plaintiff's physical condition.

(11)

On June 8, 1984, Dr. Rosenkrantz found that plaintiff enjoyed a good, active range of neck movement which indicated a healing process. On July 2, 1984, Dr. Rosenkrantz noted continued improvement in plaintiff's condition. At this time he had a normal gait (i.e. normal posture and no limp) which indicated no severe nerve or muscle problems in plaintiff's legs or back. It is at this point that the Court believes plaintiff had substantially recovered from any collision-induced injury. Accordingly, the Court finds that defendant's negligence occasioned the pain and suffering experienced by plaintiff from the date of the accident through July 2, 1984. Because plaintiff's posture was essentially normal at this time, a recurrence of the symptoms would necessarily be caused by forces unrelated to the crash six months earlier.

(12)

At some time in July 1984, after having made steady improvement since January 1984, plaintiff began walking more frequently and engaged in supermarket shopping. While visiting Dr. Rosenkrantz, plaintiff was found to have "over-asserted" himself and exacerbated his condition. This re-injury was unrelated to the collision.

(13)

Plaintiff continued to visit Dr. Rosenkrantz.[4] By the end of August, 1984, he was advised to go back on his neck and back exercise program. While plaintiff continued to complain of pain in his back, Dr. Rosenkrantz's testimony reflects that signs of improvement as to plaintiff's neck and back were noted throughout September and October, 1984.

(14)

In order to resolve the question of disc injury in conclusive fashion, a CT scan was conducted upon plaintiff on November 30,

---

**3.** Prior to the electromyelogram, Dr. Rosenkrantz examined plaintiff on February 2, 14 and 27, 1984.

**4.** Plaintiff was seen by Dr. Rosenkrantz on August 31, 1984, September 17, 1984, October 2, 1984, October 16, 1984, November 26, 1984, December 5, 1984, December 19, 1984 and December 25, 1984.

1984. The results of the CT scan were completely negative and normal, ruling out any nerve root or disc involvement.

(15)

In April, 1985, fifteen months after the collision giving rise to this action, plaintiff was tested by Phillip T. Griffin, Ph.D., a clinical psychologist. Based on a single visit and plaintiff's answers to test questions, Dr. Griffin concluded that plaintiff was depressed and that he expressed this depression through complaints of bodily pain. This was the first indication to the Court that plaintiff allegedly suffered a psychological disability resulting from the collision. An examination of all other medical reports made during the claimed period of plaintiff's disability reveal neither complaints by plaintiff of depression nor any diagnosis of a condition of depression. This inconsistency motivated the Court to obtain an independent psychiatric evaluation of plaintiff.

(16)

Subsequent to the May 9th, 1985 trial of this matter, plaintiff was twice[5] examined by Dr. Charles R. Smith, M.D., a respected psychiatrist. After his first visit, Dr. Smith noted that plaintiff seemed to be depressed. However, after plaintiff's second visit, Dr. Smith noted a dramatic change in plaintiff's behavior and personality. Between the two visits, plaintiff had gone to Southeast Louisiana Hospital for two weeks of treatment.[6] Dr. Smith noted that following the hospital stay and change in medication, Mr. Amonfo showed "marked improvement", was "more alert," and "walked into the office in a friendly manner."[7] Dr. Smith noted that the improvement was such that plaintiff "had been considered on the road to recover."[8]

(17)

When called upon to determine if the January 11, 1984 accident was the cause of plaintiff's condition, Dr. Smith opined that "the diagnosis of schizophrenia, the most likely one, would in its origin involve genetic, endocrine, and many life process factors that would *proceed* the accident." [emphasis added]. Dr. Smith further noted that *"stressful events* could aggravate the underlying disorder."[9] [emphasis added].

(18)

In regard to whether the symptoms exhibited by plaintiff were brought about by the accident or a post-accident failure of a prospective business venture, Dr. Smith stated, "... although the accident was a stressful circumstance for him, there are other matters to be taken into account and neither can be considered a solitary, causative agent." Dr. Smith further stated, "there were at least three or four other factors to take into consideration...."[10]

(19)

After a careful review of Dr. Smith's report and deposition transcript, the Court finds that plaintiff's mental problems preceeded the accident, and that other factors including the failure of a future grain business, the failure of a prior marriage, and an inability to relate to American culture and language exacerbated this pre-existing problem. While the collision may have been an aggravating factor in a pre-existing condition, plaintiff failed to prove at trial that the accident was the cause of either his mental illness or his failed business venture.

(20)

Plaintiff has not proven any lost wages or profits. At the time of the accident, Mr. Amonfo was unemployed. While he

---

**5.** Mr. Amonfo was seen by Dr. Smith on June 10 and July 16, 1985. On July 23, 1985 Dr. Smith rendered his report as to plaintiff's condition.

**6.** At Southeast Louisiana Hospital, plaintiff was diagnosed as psychotic. During this time, plaintiff was taken off anti-depressant medications which, according to Dr. Smith's July 23, 1984 report, p.2, may have "activated or prolonged the psychotic disorder."

**7.** Dr. Smith's report of July 23, 1985, pg. 2.

**8.** Dr. Smith's deposition of September 30, 1985, pgs. 13–14.

**9.** Dr. Smith's report of July 23, 1985, pg. 4.

**10.** Dr. Smith's report of July 23, 1985, pg. 4.

planned to form his own grain exportation business, he had not entered into any contracts for the purchase or sale of any grain. Further, plaintiff presented no records of any money that he had made, expended or lost in connection with the anticipated grain endeavor.

(21)

Plaintiff claims to have incurred $2,068.84 in rental car expenses as a result of the accident. Plaintiff did not show the necessity or the reasonableness of this February through April 11, 1984 rental and testified on cross-examination that after April 11, 1985 he stayed home and developed a fear of automobiles. The Court finds that this immoderate rental expense, while incurred as a result of the collision caused by defendant's negligence, was not justified in light of the evidence presented by plaintiff.

IV.

CONCLUSIONS OF LAW

(1)

This Court has jurisdiction over this claim pursuant to 28 U.S.C. § 1332(a)(1). When a federal court's jurisdiction is based upon diversity of citizenship, the Court must apply the substantive law[11] of the state in which it is sitting. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Morris v. LTV Corp.*, 725 F.2d 1024, 1026–27 (5th Cir.1984). Additionally, in diversity actions, this Court is bound by the decisions of the intermediate appellate courts absent a strong showing that the Louisiana Supreme Court would hold otherwise. *Estate of Mann*, 731 F.2d 267 (5th Cir.1984); *See Commissioner v. Estate of Bosch*, 387 U.S. 456, 464–65, 87 S.Ct. 1776, 1782–83, 18 L.Ed.2d 886 (1967); *See generally* 1A Moore's Federal Practice ¶ 0.307[2] (2d ed. 1976).

(2)

LSA–CC Art. 2315 provides:
"Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

(3)

In a suit for damages, it is plaintiff's burden to prove that the damages he suffered were the result of defendant's fault, and to support an award there must be evidence in the record. *Borden, Inc. v. Howard Trucking Co., Inc.*, 454 So.2d 1081, 1092 (La.1983). Plaintiff also bears the burden of establishing each and every element of damage claimed. *Woodfield v. Dugas*, 450 So.2d 1011, 1014 (La.App. 1st Cir.1984). Proof must be shown by a preponderance of the evidence, and mere possibility is not sufficient. *Meyers v. Imperial Casualty Indemnity Co.*, 451 So.2d 649, 658 (La.App. 3rd Cir.1984). Further, under Louisiana law, a damage award cannot be based on speculation or conjecture. *Haley v. Pan American World Airways, Inc.*, 746 F.2d 311, 316 (5th Cir.1984), *rehearing denied*, 751 F.2d 1258 (5th Cir.1984); *Napasco International, Inc. v. Tymshare, Inc.*, 556 F.Supp. 654, 661 (E.D.La.1983).

(4)

The testimony of plaintiff coupled with that of the witness, Keith Johnson, convinced the Court that defendant's driver ran a red light and caused the collision with plaintiff's automobile. The Court concludes that plaintiff carried his burden of proof as to both the circumstances of the accident and defendants' fault in accordance with *Borden, Inc. v. Howard Trucking Co., Inc., supra.* The testimony of Dr. Rosenkrantz established that plaintiff suffered back and neck pain until July 2, 1984 when the doctor determined plaintiff had regained normal posture. *Id.* Therefore, the Court perceives plaintiff's proven damages to be those relative to his automobile, medical expenses incurred between January 11, 1984 and July 2, 1984, and plain-

---

11. "Substantive" in this context means that the state law applicable to the issue or issues of the suit would significantly affect the outcome of the suit. If so, the federal court must apply the applicable state law on these issues. *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 109, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079 (1945); *Morris v. LTV Corp., supra* at 1027.

tiff's pain and suffering between the date of the accident and July 2, 1984.

### (5)

As to plaintiff's personal pain and suffering experienced as a result of neck and/or back trauma sustained in the accident, the Court's general damage award is guided by previous appellate decisions in Louisiana involving similar injuries. In accordance with *Cassreino v. Brown*, 144 So.2d 608, 610 (La.App. 4th Cir.1962), "awards should be made with some degree of uniformity in instances involving comparable cases, to the end that awards will not be out of proportion with one another." The *Cassreino* court, in an opinion by Judge Tate, recognized three types of injuries in regard to duration and severity of pain in relation to general damages awardable to a plaintiff. These categories are:

1. An injury producing "permanent disability or severe pain of prolonged duration."

2. An injury producing "severe initial pain and with however only a short period of residual discomfort," or "producing less severe pain but a relatively long period (e.g. a year or two) of residual discomfort or disability."

3. An injury producing "moderate or slight pain, which is cured without residual [pain] in a matter of weeks."

144 So.2d at 611.

### (6)

This Court has found that the plaintiff's physical condition had returned to "normal posture" as of July 2, 1984, and that an electro myelogram performed on plaintiff in March 1984 ruled out disc or nerve root injury.[12] Therefore, the Court concludes that plaintiff falls into the second class of neck/back injuries described in *Cassreino*, i.e. "severe initial pain and with however only a short period of residual discomfort."

**12.** In addition to the electro myelogram, a CT scan was performed on plaintiff on November 30, 1984. The results were completely negative and normal.

### (7)

In *Mart v. Schlumberger, Ltd.*, 422 So.2d 1205, (La.App. 1st Cir.1982), plaintiff was injured in an automobile accident. The appellate court observed:

"... Nowhere in that evidence is it indicated that she sustained a serious injury as a result of the accident. In fact, the most definite diagnosis, the one contained in Dr. Landry's evaluation of August 13, 1981, *indicated the plaintiff had sustained a combined cervical and lumbar strain. Both of the myelograms run on plaintiff were normal.*" [emphasis added].

422 So.2d at 1207. This case is factually similar to the case at bar. Both plaintiffs sustained cervical and lumbar strains and both underwent myelograms which had negative results.[13] In *Mart*, the appellate court upheld the trial court's award of $3,000.00 in general damages awarded to plaintiff.

### (8)

The Court has reviewed other Louisiana appellate decisions involving automobile collisions which result in cervical and lumbar sprains to the plaintiff, as well as noting the general damages those actions have awarded. In *Tate v. Myers*, 422 So.2d 532, 533 (La.App. 5th Cir.1982), two plaintiffs each suffering cervical and lumbar sprain injuries were, respectively, awarded $5,193.00 and $4,700.00. In *Bruins v. United Sates Fleet Leasing, Inc.*, 430 So.2d 386, 387 (La.App. 3rd Cir.1983) plaintiff suffered both a cervical and a low back sprain. The appellate court upheld the trial court's award of $4,500.00 in general damages to plaintiff. In *Lee v. USF & G*, 433 So.2d 903, 905 (La.App. 3rd Cir.1983), the court ruled that it was not an abuse of discretion to award $4,000.00 in general damages to a plaintiff who, in an automobile collision, suffered an acute cervical strain as well as an acute lumbar strain and was found to be

**13.** In *Mart*, the plaintiff underwent two negative myelograms. In the instant dispute, plaintiff underwent one negative myelogram and one negative CT scan.

suffering back spasms seven weeks after the accident and a mild sprain some nine months after the accident.

(9)

■ In comparing the general damage awards in the four cases cited above, the Court observes that the award range is from $3,000.00 to $5,193.00. Based upon the fact that both an electro myelogram and a CT scan revealed no abnormalities as to Mr. Amonfo's spine or nerve roots and considering the five and one-half month period of pain the Court attributes to the collision, an award of $3,500.00 to plaintiff in general damages is appropriate.

(10)

■ The Court finds that Mr. Amonfo has not sustained his burden of proof in showing that his alleged psychological damage was caused by the accident. The burden of proving such damages is set forth in *Jordan v. Travelers Insurance Co.*, 231 So.2d 678, 684 (La.App. 1st Cir. 1970), *modified on other grounds*, 257 La. 995, 245 So.2d 151 (1971) which held:

> "We now turn our attention to the crucial issue in this instant matter and that is whether or not the negligent act of the defendant also brought about the subsequent mental residuals endured by plaintiff. For plaintiff to recover for these injuries he must establish that there is a causal relation between the two and that the injuries complained of did in fact result from the accident. In shouldering this burden of proof, probabilities and possibilities are not enough; however, neither is plaintiff required to prove this causal relation beyond a reasonable doubt. The amount of proof required, therefore involves a question of degree. The answers thereto is one of reasonableness. This is so because not all injuries are susceptible of proof by testimony that is beyond legitimate quandary. It is for this reason that our jurisprudence has provided that the legal requirement for the burden of proof is

satisfied when plaintiff has established to a reasonable certainty that the negligent act caused his injuries. To prove less is not enough but to require more would make a plaintiff's task an unreasonable one and in many cases impossible." *Jordan v. Travelers Insurance Company*, supra, 231 So.2d at 684.

Where, as here, evidence of post-traumatic neurosis is based on symptoms that do not manifest themselves at a point in time close to that of the trauma, such evidence must be carefully scrutinized and viewed with caution. *Jordan v. Travelers Insurance Co.*, *supra* at 685; *Waldo v. Toye Bros. Yellow Cab Co.*, 210 So.2d 125, 127–29 (La. App. 4th Cir.1968). The Court notes that plaintiff's complaints of psychological difficulty came after both a negative electro myelogram and a negative CT scan. Furthermore, the psychiatric evaluation of Mr. Amonfo by Dr. Smith revealed "the diagnosis of schizophrenia, the most likely one, would in its origin involve genetic, endocrine, and many life process factors that would long proceed the accident." [14] On the basis of the negative tests, the psychiatric evaluation of plaintiff by Dr. Smith, and Dr. Rosenkrantz's finding that plaintiff had returned to normal posture as of July 2, 1984, the Court concludes that there is no legal basis for attributing plaintiff's psychiatric problems to the January 11, 1984 collision.

(11)

■ At the time of the accident, plaintiff was not employed and, although he testified that he intended to start up a business, he had taken no substantial steps to do so. Therefore, no claim for lost wages or for lost profits has been proven.

> "It is an established rule that lost profits resulting from an offense or quasi offense must be proved with reasonable certainty, and damages will not be allowed where the lost profits are purely conjectural or uncertain." *Meshell v. INA*, 416 So.2d 1383, 1388 (La.App. 3rd

**14.** Dr. Smith's report of July 23, 1985, pg. 2.

Cir.1982), and cases and authorities cited therein.

A claim for lost profits based solely on the testimony of the injured party and unsubstantiated by other evidence does not constitute a reasonable certainty. *Louisiana Joint Underwriters v. Gant,* 439 So.2d 1153, 1157 (La.App. 4th Cir.1983); *See also Borden, Inc. v. Howard Trucking Co., Inc., supra* at 1097; *Landry v. Bourque,* 460 So.2d 33 (La.App. 1st Cir.1984).

(12)

■ Mr. Amonfo claims $2,068.84 in damages for rental of a substitute vehicle. This amount is excessive. This item of damages can only be allowed for the period of time during which the plaintiff could reasonably have had the original vehicle repaired or in which a new vehicle could have been purchased. As held in *Nolan v. Liuzza,* 301 So.2d 892, 894 (La.App. 4th Cir.1974),

"... The period of compensable loss of use is only 'the time required by the exercise of proper diligence to secure its repair,' (citations omitted) and, when damage is very extensive, the time needed to determine whether the car is economically repairable or should be replaced."

At trial, plaintiff presented neither evidence which would indicate that his Ford LTD automobile was in the repair process from January 11 until April 11, 1984 or that it had been declared a constructive, total loss. The only reason given for the return of the rental automobile was provided by plaintiff on cross-examination: He developed a fear of automobiles.[15] After considering the extensive damage to plaintiff's automobile caused by the collision, in relation to the unexplained three month rental period, the Court concludes that $750 represents adequate compensation to plaintiff for rental automobile expenses.

(13)

The damages recoverable by plaintiff, based upon the negligence and fault of defendants, are as follows:

1. Collision damage to plaintiff's Ford LTD of $3,165.00.

2. All medical expenses incurred by plaintiff from January 11 through July 2, 1984.

3. Rental automobile expenses of $750.00.

4. Plaintiff's pain and suffering: $3,500.00.

(14)

■ While the general rule requires that the party cast in judgment pay all costs of trial, *Borden, Inc. v. Howard Trucking Co., Inc.,* 425 So.2d 893, 899 (La.App. 1st Cir.1983), the Court may make an equitable, different provision for costs. *Bowman v. New Orleans Public Service, Inc.,* 410 So.2d 270, 271 (La.App. 4th Cir.1982); *Metalock Corp. v. Metal Locking of La., Inc.,* 260 So.2d 814, 822 (La.App. 4th Cir. 1972), *writ denied,* 262 La. 189, 262 So.2d 788 (1972). Accordingly, the Court shall require each party to bear its own costs.

(15)

IT IS ORDERED that judgment be rendered in favor of plaintiff and against defendants in the amount of $7,415.00 [16] plus all unpaid medical expenses incurred by plaintiff from January 11 through July 2, 1984, together with legal interest from the date of judicial demand. Plaintiff shall submit an itemized, proposed form of judgment which shall include the $7,415.00 plus itemized medical expenses incurred from January 11, 1984 through July 2, 1984. The proposed judgment shall be submitted

**15.** The statement by plaintiff that, at the time the rental automobile was returned on April 11, 1984, he had developed a "fear of automobiles" further convinces the Court that plaintiff was psychotic and not simply depressed. The Court perceives no rational connection between this psychotic episode and the collision three months earlier.

**16.** $3,165.00 for collision damage to plaintiff's Ford LTD, $750.00 for rental automobile expenses, plus $3,500.00 for plaintiff's personal pain and suffering.

to the Court by MONDAY, DECEMBER 30, 1985.